**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRADLEY RUDKIN** | ' | |
| | ' | |
| **Plaintiff,** | ' | |
| | ' | |
| **v.** | ' | **Civil Action NO. 1:17-cv-849-LY** |
| | ' | |
| **ROGER BEASLEY IMPORTS, INC.** | ' | |
| | ' | |
| **Defendant.** | ' | |

**ROGER BEASLEY IMPORTS, INC.'S OBJECTIONS TO REPORT AND
RECOMMENDATION DENYING MOTION TO DISMISS**

Roger Beasley Imports, Inc. ("Beasley") files its Objections to the Report and Recommendation (Clerk's Doc. 18) denying Beasley's Motion to Dismiss, for Fees, and Sanctions (Clerk's Doc. 8), and would show the Court as follows:

**INTRODUCTION**

The Report and Recommendation, in denying Beasley's Motion, adopted a Fifth Circuit dissent while declining to follow existing Fifth Circuit precedent. It ruled that Texas's anti-SLAPP statute, the Texas Citizen's Participation Act ("TCPA"), does not apply in federal court. Because the Fifth Circuit has held that an indistinguishable state anti-SLAPP statute does apply in federal court, and because the weight of authority in this Circuit has followed that authority, it was error to instead follow a minority opinion that reached the opposite conclusion. The TCPA is a substantive law that does not "directly collide" with any federal law, so it must be followed under the *Erie* Doctrine.

The Report and Recommendation also neglected to follow the recent Texas case law interpreting the TCPA to broadly apply to any case related to communications that are even tangentially related to specified matters of public concern. The statements Rudkin accuses

Beasley's employees of making regarding his transgender status fall within the TCPA's reach—and the widespread media attention this case has received removes any doubt of that conclusion. Beasley's TCPA motion should be granted.

## FACTUAL SUMMARY

Plaintiff Rudkin sued in Travis County District Court, claiming that during his employment with Defendant Beasley, Beasley "publicized" information about Rudkin being transgender, "made unwelcome and harassing comments" about being transgender and his genitalia, "disclosed" that he was transgender, and instructed him to "keep it professional." (Pet. ¶¶ 9–10; 27–29.) Beasley removed the case and filed its Motion to Dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

This case then began receiving national media attention. (*See* Clerk's Doc. 13-1.) Rudkin noted the widespread coverage the issue was receiving, announcing on social media that "[t]hese [articles] are turning up all over the internet and in every state," and posting an article about Beasley defending itself for allegedly "outing" LGBT employees. (*Id.* at 8.) Dozens of similar articles appeared on sites nationwide, several examples of which were attached as evidence to support Beasley's Motion. (*Id.* at 9–16.)

The Magistrate Judge issued his Report and Recommendation, adopting a dissent by the Fifth Circuit that opined that the TCPA should not be enforced in federal court. As an alternative ruling, the Report and Recommendation held the matter was not one of public concern, such that the TCPA did not apply.

## ARGUMENT AND AUTHORITIES

This Court's *de novo* review will reveal that the Report and Recommendation's holding was erroneous as to both the enforceability of the TCPA in federal court and as to the TCPA's

applicability to the pleadings in this case.  *See* 28 U.S.C. § 636(b)(1) (requiring *de novo* review of report and recommendation following timely objections).  Beasley objects to both legal conclusions and to their related findings.

## I.      The TCPA is enforceable in federal court.

The Court should follow the Fifth Circuit and its sister courts in holding state anti-SLAPP laws, including the TCPA, are enforceable in federal court.

Under the *Erie* Doctrine, "federal courts apply state substantive law and federal procedural law."  *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011) (internal quotations omitted).  A substantive state law does not apply, however, if a federal rule "is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law."  *Id.* at 333 (internal quotations omitted).  Because precedent in this Circuit holds that the TCPA is substantive law and because it reflects no "direct collision" with any federal law, the TCPA is enforceable here.

### a.    The TCPA is substantive state law.

The courts have properly held that the TCPA is a substantive law.  To determine whether a law is substantive or procedural, the Court considers whether "it significantly affect[s] the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State."  *Id.* at 335.  The application of this question is guided by considering the "twin aims" of *Erie:* "discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Id.* at 336.

The Report and Recommendation's analysis of this issue consisted of wholesale adoption of a dissent and of a D.C. Circuit opinion concerning D.C.'s anti-SLAPP statute.  (Clerk's Doc. 18 at 3–4 (citing *Cuba v. Pylant*, 814 F.3d 701, 706 (5th Cir. 2016) (Graves, J., dissenting);

*Abbas v. Foreign Policy Grp.*, LLC, 783 F.3d 1328, 1333- 34 (D.C.Cir.2015).)  This was error because the Fifth Circuit has held a state anti-SLAPP law is enforceable in federal court; the weight of authority within the Circuit has properly decided that the TCPA applies in federal court; and Judge Graves's reasoning is flatly inconsistent with other binding law.

   1. **The Report and Recommendation erred by rejecting precedent in favor of a minority opinion.**

   The Fifth Circuit's standing precedent is that Louisiana's anti-SLAPP statute is "nominally procedural" but does apply in federal court—including its burden-shifting scheme. *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168–69 (5th Cir. 2009).  The Circuit's district courts have, accordingly, universally followed that precedent, ***finding no grounds to distinguish Henry's holding*** when interpreting Texas's Act.  *E.g. Haynes v. Crenshaw*, 166 F. Supp. 3d 773, 777-78 (E.D. Tex. 2016) (citing *Henry* and describing Louisiana's Act as "nearly identical"); *Walker v. Beaumont ISD*, 2016 WL 1156852, at *1 (E.D. Tex. 2016) (same); *Williams,* 2014 WL 2611746, at *1 (following *Henry* and correctly noting "[t]here is no material difference between the Louisiana and Texas anti-SLAPP statutes"); *see Banik v. Tamez,* 2017 WL 1228498, at *2 (S.D. Tex. Apr. 4, 2017) (citing *Henry* and holding, "[s]ince the Fifth Circuit has previously ruled on state anti-SLAPP statutes, . . . the TCPA should apply in this case."); *Khalil v. Memorial Hermann Health Sys*., 2017 WL 5068157, at *4 (S.D. Tex. Oct. 30, 2017) (concluding the Fifth Circuit's "assumption that the [Texas] Act applies in federal court and its application of the similar Louisiana anti–SLAPP statute [in *Henry*] are persuasive").

   Both parties' briefing recognized the consensus of this Circuit's courts applying the TCPA in diversity cases.  (*See* Resp. at 2 (citing cases); Mot. at 1–2.)  And the Magistrate Judge correctly noted that the distinction between state-law claims subject to supplemental jurisdiction and diversity-jurisdiction cases is "not material, given that *Erie* applies to cases involving both

diversity and supplemental jurisdiction." (Clerk's Doc. 18 at 4 n.2 (citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989); *Bott v. J.F. Shea Co., Inc.*, 388 F.3d 530 553 n.3 (5th Cir. 2004)).) The TCPA motion is directed against only the Texas common-law claims, of which this Court has supplemental jurisdiction.

While the Fifth Circuit is free to continue questioning its own precedent or to reverse course, this Court in the meantime is bound to follow *Henry*— rather than adopting a minority opinion.

### 2. The Report and Recommendation's reasoning is contrary to law.

Even if the TCPA's enforceability in federal court were wholly unaddressed by the Fifth Circuit, Judge Graves's dissent in *Cuba* should be rejected on its merits because its reasoning is faulty and contradicts other settled Court of Appeals precedent. The Report and Recommendation quoted and relied upon the dissent's analysis that the TCPA is procedural because it is (1) found in the Texas Civil Practice and Remedies Code; (2) provides for a pre-trial motion; (3) establishes time limits; (4) grants a right of interlocutory appeal; and (5) authorizes a fee award. (Clerk's Doc. 18 (quoting *Cuba*, 814 F.3d at 720).) None of these are grounds for disregarding a state statute as "procedural" under *Erie*.

First, Texas's Responsible Third Party pre-trial motion mechanism shares the first three of these characteristics with the TCPA motion, yet is enforceable in federal court. *See Sullivan v. Round Rock*, No. A-14-CV-349-AWA, 2017 WL 3015423, at *3 (W.D. Tex. July 14, 2017) ("federal district courts in Texas have held that Chapter 33 does not conflict with the Federal Rules of Civil Procedure"); *e.g. PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 980 (S.D. Tex. 2013), *aff'd sub nom. Pemex Exploracion y Produccion v. Conocophillips Co.*, 595 F. App'x 445 (5th Cir. 2015).

As for the TCPA's grant of interlocutory appeal, the Fifth Circuit has already addressed that provision in great detail.  *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014).  The court held, in a federal case interpreting and applying the TCPA, that federal law rather than state law determines the availability of appellate review in federal court.  *Id.* at 750 (noting that the TCPA's "provisions for interlocutory review are instructive" but not controlling).  Appellate review is instead available under the federal collateral-order doctrine.  *Id.*

Nor does the last characteristic noted by Judge Graves and the Report and Recommendation—TCPA's inclusion of a fee-shifting provision—render the TCPA a procedural law.  The Fifth Circuit has recognized the applicability of a manufacturer's indemnification duty (also from the Texas Civil Practices and Remedies Code) despite the Act's inclusion of a fee-shifting mechanism.  *Burden v. Johnson & Johnson Med.*, 447 F.3d 371, 374 (5th Cir. 2006) (certifying question concerning indemnity provision in Section 82.002 to Texas Supreme Court), *certified question answered sub nom. Owens & Minor, Inc. v. Ansell Healthcare Prod., Inc.*, 251 S.W.3d 481 (Tex. 2008).  Under the *Erie* doctrine, it has applied other fee-shifting provisions from the Code as well.  *E.g. Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 (5th Cir. 2000) (applying TEX. CIV. PRAC. & REM. CODE § 38.001 and adhering to Texas's interpretation of that statute).

The "twin aims" of *Erie* and the "significant[] [e]ffect" that the TCPA has on this case also require deeming the TCPA substantive.  *See All Plaintiffs*, 645 F.3d at 335.  The TCPA has not only a significant, but ***a dispositive effect*** on the case's state-law claims.  Beyond the incentive for forum-shopping that ignoring the TCPA would bring, equitable administration of the laws would be favored by applying the same doctrine in both forums, because of the substantive rights involved.  *See id.* at 335. While there are specialized dismissal procedures

found in the TCPA, the courts closely analyzing the issue have held "these procedural features are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law regarding defamation." *Williams v. Cordillera Commc'ns, Inc.,* No. 2:13-CV-124, 2014 WL 2611746, at *1 (S.D. Tex. June 11, 2014).

Without any distinguishing facts between *Henry* and this case, *Henry* must be followed. *See Banik*, 2017 WL 1228498 (holding TCPA applies because of the "nature of precedent. . . . [I]n the Fifth Circuit, state anti-SLAPP statutes have been entertained in federal court on the ground that they constitute *substantive* law.") (emphasis in original).   The Report and Recommendation erroneously held the TCPA was procedural law that could be ignored.

### b.   TCPA does not conflict with Federal Rules 12 or 56.

The Report and Recommendation applied the wrong standard for an *Erie* conflict between federal and state law.  A conflict exists only when there is a "direct collision" between the state and federal rules, such that the federal law "leav[es] no room for the operation of [the state] law." *All Plaintiffs*, 645 F.3d at 333.  The Report and Recommendation, in adopting Judge Graves's dissent, instead analyzed whether TCPA's standards **differed from** the standards for dismissal under Rules 12 or 56.   *See Cuba*, 814 F.3d at 720 (5th Cir. 2016) (Graves, J., dissenting).  Differing standards between the two types of motions creates no "collision," and is no indication that the two do not operate harmoniously in the same lawsuit.

The TCPA provides that, "[i]f a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."  TEX. CIV. PRAC. & REM. CODE § 27.003(a).  "[A] motion to dismiss a legal action **under this section** must be filed **not later than** the 60th day after

the date of service of the legal action." § 27.003(b) (emphasis added).  This provision creates no conflicts with Federal Rule 12's provisions concerning the federal bases for motions to dismiss. Rule 12 provides that "a party **may assert** the following defenses by motion" before its responsive pleading, and that certain of those defenses are waived by failing to make them before pleading.  FED. R. CIV. P. 12(b) (emphasis added); (h).  Those waivable defenses are listed in Rule 12 and include jurisdictional and venue objections.  *Id.*  The nonwaiveable defenses include subject-matter jurisdiction and failure to state a claim.  *Id.*

Rules for a "motion to dismiss under [the TCPA's] section" regarding a legal action related to free-speech rights thus create no conflict with the seven federal bases for a Rule 12 motion to dismiss.  Nor can the TCPA's terms create a conflict with Rule 56, which specifies the procedure for an entirely different motion—a motion for summary judgment.  FED. R. CIV. P. 56 (emphasis added).

Not only has the Fifth Circuit Court of Appeals identified no *Erie* conflict between the Federal Rules and a state Anti-SLAPP statute; a deadline for a motion that is not described in the federal rules cannot possibly trigger a direct collision under *Erie*.  *See United States ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963 (9th Cir.1999) (finding no conflict between state anti-SLAPP motion and Rule 12 because state motion "adds an additional, unique weapon to the pretrial arsenal"), *cited in Report & Recommendation* at 4.  While the Federal Rules are "addressed to different matters," the Texas Act "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis."  *Banik*, 2017 WL 1228498, at *3.

This Court applies, for example, the Texas statute concerning responsible third parties. That Act requires that such a "motion must be filed on or before the 60th day before the trial date," along with a 15-day objection deadline for the motion.  TEX. CIV. PRAC. & REM. CODE

§ 33.004(a); (f).  Such a motion is not contemplated in the Federal Rules, nor is its deadline. Indeed, motion responses are due under federal local rules within seven days, while the state-created deadline grants 15 days for motion objections.  Despite that discrepancy, this Court has applied both, apparently finding no "direct collision."  *E.g. Ramos v. Beltran*, No. 5:15-CV-1042-RP, 2016 WL 8234983, at *1 (W.D. Tex. Dec. 20, 2016).  Because the responsible-third-party rule reflects a state substantive policy, it is applied in federal court despite the existence of Federal Rule 14, which governs when and under what circumstances a third party may be brought into an action.

The TCPA does not conflict with the federal rules.  No "collision" has apparently occurred during the past seven years, as federal courts have repeatedly heard and ruled on TCPA motions and Rule 12 motions to dismiss in the same case.  *E.g. Culbertson v. Lykos*, 790 F.3d 608, (5th Cir. 2015); *Walker*, 2016 WL 1156852, at *4; *Khalil*, 2017 WL 5068157, at *4. Rudkin has identified no specific conflict, and the mere existence of motion to dismiss in the Federal Rules cannot be said to "leave no room" for motions by a similar label under different substantive law.  The TCPA should be enforced in this action.

## II.     The TCPA applies to Rudkin's claims because the alleged statements were "in connection with issues related to" matters of public concern.

The Report & Recommendation gave cursory treatment to the question of whether the communications in this case address "a matter of public concern" and ignored recent case law demanding broad construction of that phrase.  Because Beasley met its burden by a preponderance of the evidence, and because Rudkin did not attempt to satisfy his burden in response, the Motion should be granted.

It is settled that private conversations among employees qualify as "communications" under the TCPA.  *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017).

Earlier this year, the Texas Supreme Court clarified the scope of the TCPA's "public concern" requirement.   *See id.*   It held that "TCPA applicability requires only that the defendant's statements are in connection with issues related to health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature."   *Id.* (internal quotations omitted).    The TCPA's list thus encompasses statements ***in connection with issues related to*** "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace."   Tex. Civ. Prac. & Rem. Code § 27.001(3).   The Court ***expressly rejected any requirement that the TCPA require more than a "tenuous or remote" or "tangential relationship"*** to those enumerated public concerns for a statement to fall within the TCPA's scope.   *Coleman*, 512 S.W.3d at 900–01.

The alleged communications[1] in this case, concerning transgender identification in the workplace are unquestionably, at the very least, "in connection with issues related to" health, economic and community well-being, and to a service in the marketplace.   The Texas Supreme Court recently noted that a statement about one person's "personal views" about another individual's individual mental health and suicide is "***clearly***" related to health, safety, and community well-being.  *See Hersh v. Tatum*, 526 S.W.3d 462, 466-67 (Tex. 2017).   The alleged statements about Rudkin can be deemed no less connected to these topics.   Indeed, Mr. Rudkin himself noted the public interest in his case, conceding that articles covering it "are turning up all over the internet and in every state."  (Clerk's Doc. 13-1 at 8.)

The Report and Recommendation's analysis did not cite the TCPA's recent Texas authority.  Neither did it analyze these statements' connection with each of those specified areas

---

[1] Mr. Rudkin created fake payroll documents in order to mislead banks into extending credit for cars.  That along with other misconduct lead to his termination.  Beasley did not fire him for being transgender.  Beasley hired and retained Mr. Rudkin as a transgender individual.

of interest as they are expansively defined.  It reasoned instead that Beasley's alleged statements were not necessarily of public concern "at the time [they] were made" because the media coverage did not happen until later.  (Clerk's Doc. 18 at 6.)  But this logic cannot answer the question.  Media coverage *necessarily* follows the event it is covering.  It is not the national media's broad coverage of these communications that retroactively converted them into a matter of public concern.  Instead, the press attention merely confirms what is already apparent from the statements themselves.  They were, practically and literally speaking, issues of public concern.

Since Beasley's alleged statements have now been revealed to be of actual public concern, it defies reality to say that they were not of public concern when made.  Statements falling under the TCPA "are not confined solely to speech that enjoys constitutional protection," and constitutional connotations of "free speech" do not even inform the meaning of the TCPA's terms.  *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 203–04 (Tex. App.—Austin 2017, pet. filed).  Instead, the TCPA's plain language controls.  Treatment of transgender individuals and their gender identification, along with the treatment of employees' gender in the workplace, are unquestionably "in connection with issues related to" *health, economic and community well-being*.  An employee's performance for a car dealership relates to a *service in the marketplace*.  The TCPA therefore applies to this case.

Because Beasley has shown by a preponderance of the evidence that the legal action is subject to the TCPA and Rudkin did not seek to meet his prima facie burden, the Motion should be granted.

**CONCLUSION**

Beasley respectfully requests that this Court reject the Report and Recommendation (Clerk's Doc. 18), grant Beasley's Motion to Dismiss, dismiss Rudkin's claims for invasion of privacy, and award Beasley costs and fees under the TCPA. Beasley further asks this Court to award it all other and further relief to which it may show itself justly entitled.

Respectfully Submitted,

DOWNS STANFORD, P.C.

By:     _____/s/ R. Lynn Fielder_____
R. Lynn Fielder
Texas State Bar No. 06971100
2001 Bryan Street, Suite 4000
Dallas, Texas  75201
lfielder@downsstanford.com
Telephone:    (214) 748-7900
Facsimile:    (214) 748-4530

And

RICHARDSON + BURGESS, LLP

By:     _____/s/ Karen C. Burgess_____
Texas State Bar No. 00796276
221 W. 6th St., Suite 900
Austin, Texas 78701
kburgess@richardsonburgess.com
Telephone:    (512) 482-8808
Facsimile:    (512) 499-8886

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2018, the foregoing was filed with the Clerk of the Court via the electronic filing/ECF system, which caused a Notice of Electronic Filing to be sent to the following counsel of record:

Justin P. Nichols
The Nichols Law Firm, PLLC
405 N. St. Mary's St., Suite 1000
San Antonio, Texas 78205

By: _____/s/ Karen C. Burgess_____
Karen C. Burgess